UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMIE LITTLEFIELD, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Cause No: 4:21-CV-304-SEP ) ) |
| AMERICAN ALTERNATIVE INSURANCE CORPORATION, | ) ) ) |
| Defendant. | ) ) |

# *DEFENDANT'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT*

COMES NOW, Defendant American Alternative Insurance Corporation ("Defendant"), and for its Memorandum in Support of its Motion for Summary Judgment, states:

## *I. BACKGROUND*

On November 19, 2020, Plaintiff filed her Petition (removed, now Doc. 2) requesting uninsured motorist coverage alleging she was performing services as a paramedic in the rear compartment of an ambulance when the ambulance came to a sudden stop, causing injuries including to her right shoulder and neck. As the sole eye-witness to the purported phantom vehicle has been deposed in this matter (Adam Coughlin, driver of ambulance), Plaintiff cannot provide evidence regarding each element of her claim. In addition, Plaintiff failed to notify police and waited just short of ten years to notify Defendant of the incident. Uninsured motorist coverage is therefore unavailable to her as a matter of law. Defendant is entitled to summary judgment.

## *II. STANDARD OF REVIEW*

Fed. R. Civ. P. 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In *Celotex*, the Court noted, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute of a material fact." *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op.*, 838 F.2d 268, 273 (8th Cir. 1988).

Once the moving party demonstrates that the record does not disclose a genuine issue of material fact, the burden shifts to the non-moving party to go beyond his pleadings and present, by affidavit or by "deposition, answers to interrogatories, and admissions on file," <u>specific facts</u> that show there is a genuine issue to be resolved at trial. Fed. R. Civ. R. 56(e) (emphasis added); *Celotex*, 477 U.S. at 323; *City of Mt. Pleasant*, 838 F.2d at 273. The non-movant "may not rely on mere denials or allegations," but must designate specific facts showing there is a genuine issue of fact for trial. *Hernandez v. Jarman*, 340 F.3d 617, 622 (8th Cir. 2003).

"All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party. E.D. Mo. L.R. 4.01(E). It is not sufficient merely to state that a fact is disputed and then cite to the record. *See, e.g., Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Nor does "the mere existence of *some* alleged factual dispute between the parties . . . defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986) (original emphasis). Evidence of a disputed factual issue that is

2

merely colorable or not significantly probative will not prevent the entry of summary judgment. *Id.* at 248.

A properly supported Motion for Summary Judgment will not be defeated by self-serving testimony. *Bacon v. Hennepin Cty. Med. Ctr.*, 550 F.3d 711, 716 (8th Cir. 2008) (citation omitted); *Gander Mountain Co. v. Cabela's Inc.*, 540 F.3d 827, 831 (8th Cir. 2008) (citation omitted). A plaintiff "must substantiate allegations with sufficient probative evidence that would permit a finding in his favor." *Bacon*, 550 F.3d at 716; *Gander*, 540 F.3d at 831. The plaintiff's opinions, coupled with unsubstantiated allegations, are not sufficient to raise a genuine issue of fact. *Assam Drug Co. v. Miller Brewing Co.*, 798 F.2d 311, 319 (8th Cir. 1986).

### III.  ARGUMENT

Plaintiff has alleged she is entitled to uninsured motorist coverage through her former employer, Monarch Fire Protection District because a phantom vehicle pulled out in front of the ambulance in which she was an occupant, caused the ambulance to abruptly stop, and injured her shoulder/arm. Doc. 2.

Defendant issued Policy Number VFIS-CM-1050492-03/000 to Monarch Fire Protection District for the policy period 02-01-2010 to 02-01-2011 ("Policy"). Ex. A. For purposes of this motion, Defendant does not dispute the subject ambulance was listed as one of the forty-three vehicles listed on the Auto Schedule Summary. Ex. A.

The relevant provisions of the Business Auto Coverage Form provide:

> **SECTION II – LIABILITY COVERAGE**
>
> **A. Coverage**
>
> > We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident"

and resulting from the ownership, maintenance or use of a covered "auto".

* * *

Ex. A, p. 49. The Business Auto Coverage Form of the Policy describes who qualifies as an insured under the Policy, and in relevant part, states:

> **1. Who Is An Insured**
>
> The following are "insured":
>
> **a.** You for any covered "auto".
>
> **b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow. . .
>
> * * *

*Id.* The Business Auto Coverage Form provides for conditions in addition to the Common Policy Conditions including:

> **SECTION IV – BUSINESS AUTO CONDITIONS**
>
> The following conditions apply in addition to the Common Policy Conditions:
>
> **A. Loss Conditions**
>
> * * *
>
> **2. Duties In The Event Of Accident, Claim, Suit Or Loss**
>
> We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
>
> **a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:
>
> **(1)** How, when and where the "accident" or "loss" occurred;
>
> **(2)** The "insured's" name and address; and

> > **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.
>
> > \* \* \*
>
> > **3. Legal Action Against Us**
>
> > No one may bring a legal action against us under this Coverage Form until:
>
> > > **a.** There has been full compliance with all the terms of this Coverage Form; and
>
> > \* \* \*

*Id.* at 54–55.

The Missouri Uninsured Motorists Coverage ("UM") Endorsement modifies insurance provided under the Business Auto Coverage Form. The relevant provisions provide:

> **A. Coverage**
>
> > **1.** We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".
>
> > \* \* \*

Ex. A, pp. 67. The Policy describes who qualifies as an insured under the UM Endorsement. The Policy provides in relevant part:

> **B. Who Is An Insured**
>
> > If the Named Insured is designated in the Declaration as:
>
> > \* \* \*
>
> > **2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

5

> **a.** Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
>
> * * *

*Id.* The UM Endorsement includes changes in conditions as follows:

> **E. Changes In Conditions**
>
> The conditions are changed for Missouri Uninsured Motorists Coverage as follows:
>
> * * *
>
> **2.** Duties In The Event of Accident, Claim, Suit or Loss is changed by adding the following:
>
> > **a.** Promptly notify the police if a hit-and-run driver is involved; and
> >
> > * * *

*Id.* at 68. The UM Endorsement sets forth several definitions. The pertinent provisions provide:

> **F. Additional Definitions**
>
> As used in this endorsement:
>
> * * *
>
> **2.** "Occupying" means in, upon, getting in, on, out or off.
>
> **3.** "Uninsured motor vehicle" means a land motor vehicle or "trailer":
>
> > * * *
> >
> > **c.** That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must either:
> >
> > > **(1)** Hit an "insured", a covered "auto" or a vehicle an "insured" is occupying"; or

> **(2)** Cause "bodily injury" to an "insured" without hitting an insured", a covered "auto" or a vehicle an "insured" is "occupying". The facts of the "accident" must be proved. We may request supporting evidence beyond the testimony of a person making a claim under this or any similar coverage to support the validity of such claim.
>
> * * *

*Id.* at 68–69.

Defendant will address: A) Plaintiff cannot establish liability through the phantom vehicle, and B) cannot establish complying with the conditions precedent for UM coverage (notice requirements to police and Defendant).

**A. Defendant is entitled to summary judgment because Plaintiff cannot show evidence regarding the element of negligence of the phantom vehicle.**

Plaintiff must, *inter alia*, show she is legally entitled to recover as compensatory damages from the owner or driver of an uninsured motor vehicle in order to have a viable cause of action against Defendant for uninsured motorist coverage. *See*, *e.g.*, *Hente v. 21st Century Centennial Ins. Co.*, 467 S.W.3d 857, 863 (Mo. Ct. App. 2015) (Plaintiff must show: "(1) the existence of a duty on the part of the phantom uninsured driver to protect [her] from injury; (2) the phantom uninsured driver's failure to perform that duty; and (3) injury to [her] resulting from that failure."); *Baker v. State Farm Mut. Auto. Ins. Co.*, 2:13-CV-4123-FJG, 2013 WL 5965638, at *2 (W.D. Mo. Nov. 8, 2013) (*Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713 (Mo. banc 1979)); *see also* Ex. A, pp. 66–69.

Here, Plaintiff testified she was in the back of an ambulance treating a patient at the time an ambulance came to a stop in St. Luke's Hospital tunnel and parking area. Ex. B, Amie Littlefield Dep. 31:2–33:20, Jan. 31, 2022; Ex. C, Adam Coughlin Dep. 21:20–23:22, 48:6–11, Jan. 27, 2022. Plaintiff did not see the phantom vehicle. *Id.* at 31:2–33:20. The driver of the ambulance testified

7

the phantom vehicle reversed out of a parking space a foot or two in a slow manner before both the ambulance and the phantom vehicle stopped. Ex. C, Coughlin Dep. 59:6–60:21. The behavior of the phantom vehicle was consistent with slowly backing out of the position until the operator could see if a vehicle were coming or going. *Id.* Firefighter Coughlin did not recall whether there were vehicles in the parking spaces to the right or left of where the phantom vehicle was reversing. *Id.* at 26:17–20. Firefighter Coughlin stated he was driving at no more than five miles per hour before he moved his foot from the gas pedal to the brake. *Id.* at 25:2–24. Firefighter Coughlin did not believe the phantom vehicle was being careless. *Id.*

Here, a vehicle simply slowly reversing one or two feet in a parking lot is insufficient to establish negligence. There is <u>no</u> evidence the operator could have seen the ambulance before he/she stopped after reversing for one or two feet. Firefighter Coughlin did not believe the phantom vehicle was being negligent. There is <u>no</u> evidence the phantom vehicle failed to keep a careful lookout (in other words, if a careful lookout were being made, whether anything would be different). to submit the "lookout" instruction, it is said, the plaintiff must still show when the defendant knew or should have known the potential danger could occur and the plaintiff also must show the defendant had time thereafter to take effective precautionary action. *Morgan v. Toomey*, 719 S.W.2d 129, 133 (Mo. Ct. App. 1986) (citing *Heberer v. Duncan*, 449 S.W.2d 561, 563 (Mo. banc 1970) ("The rule is well established in this state that alleged negligent failure to keep a careful lookout is not to be submitted to the jury unless there is substantial evidence from which the jury could find that, in the exercise of the highest degree of care,[1] the allegedly negligent party, had he kept a careful lookout, could have seen the other vehicle or person in time thereafter to have taken

---

[1] As this incident took place on St. Luke's Hospital property, the degree of care owed ordinary, not the highest as would be owed on public thoroughfares. *Doolin v. Swain*, 524 S.W.2d 877, 881 (Mo. banc 1975).

effective precautionary action."); *Bunch v. McMillian*, 568 S.W.2d 809, 811 (Mo. Ct. App. 1978)). Here, lack of substantial evidence to support failure to keep a careful lookout is fatal to Plaintiff's cause of action. As Plaintiff cannot establish each element of her cause of action against the phantom vehicle as a prerequisite to UM coverage, and as Defendant has submitted undisputed evidence negating negligence of the phantom vehicle (Firefighter Coughlin's account), Defendant is entitled to summary judgment.

**B. Defendant is entitled to summary judgment because Plaintiff failed to promptly notify police and failed to promptly notify Defendant of the subject incident.**

Under Missouri law, the court must accept the clear and unambiguous language of an insurance policy as the agreement between the parties and give effect to the intention of the parties as evidenced by such language. *Landes v. State Farm Fire & Casualty Co.*, 907 S.W.2d 349, 358 (Mo. Ct. App. 1995). Unless an ambiguity exists or a statute or public policy requires otherwise, the policy must be enforced as written. *Jasper v. State Farm Mut. Ins. Co.*, 875 S.W.2d 954, 957 (Mo. Ct. App. 1994). An ambiguity exists when the language of an insurance policy reasonably and fairly is open to different constructions. *Standard Artificial Limbs, Inc. v. Allianz Ins. Co.*, 895 S.W.2d 205, 209 (Mo. Ct. App. 1995). The fact that a term may have a flexible meaning in the abstract and may be subject to differing constructions by the parties does not necessarily make the term ambiguous. *Crim v. National Life & Accident Ins. Co.*, 605 S.W.2d 73, 76 (Mo. banc 1980). An ambiguity arises from the words of an insurance policy only if the language is susceptible to interpretation and its meaning is uncertain. *Herpel v. Farmers Ins. Co.*, 795 S.W.2d 508, 510 (Mo. Ct. App. 1990).

    **1. Plaintiff's claim is barred in that police were not promptly notified of the incident.**

In Missouri, notice provisions (which are contained in the subject policy) as conditions precedent to uninsured motorist coverage are enforceable. *See Friend v. State Farm Mut. Auto. Ins. Co.*, 746 S.W.2d 420, 422–23 (Mo. Ct. App. 1988) (citing *Girard v. State Farm Mut. Auto. Ins. Co.*, 737 S.W.2d 254 (Mo. Ct. App. 1987) and *Billings v. State Farm Mutual Auto Ins. Co., et al*, 741 S.W.2d 886 (Mo. Ct. App. 1987)).

The Policy provides for duties in the event of an accident, claim, suit or loss. These duties include promptly notifying the police if a hit-and-run driver is involved. Ex. A, p. 55. With respect to a provision regarding prompt notice to the policy, there must be: a) failure to substantially comply with the prompt notice requirement to show breach of the condition/policy, and b) prejudice resulting from the failure in order to show the breach was material. *Girard v. State Farm Mut. Auto. Ins. Co.*, 737 S.W.2d 254, 255 (Mo. Ct. App. 1987) (upholding failure to promptly notify police provision in hit-and-run accident).

### a. Police were not promptly notified of the subject incident.

The *Girard* Court upheld an Uninsured Motor Vehicle provision which required an insured to report a "phantom vehicle" accident to the police within twenty-four hours. *Id.* at 257. The subject policy required notification of a phantom vehicle accident within twenty-four hours and to the insurer within thirty days. *Id.* at 255. The Court found that the policy language was "unequivocal in its terms and prescribe[d] the duties necessary to presentment of a claim under the uninsured motorist coverage section of the policy." *Id.* at 256. There was no dispute that the plaintiff never advised any law enforcement agency of any phantom vehicle within twenty-four hours of the accident, and that she first advised of the matter when filing her lawsuit eighteen months subsequent to the accident. *Id.* at 255–56.

Here, unlike in *Girard*, the Policy does not define a specific period in which an insured must notify the police in order that it be done "[p]romptly." However, Missouri Courts have found that "prompt notice provision[s] [use] direct and clear language and 'prompt' is defined in the case law." *Lurie v. Commonwealth Land Title Co., LLC*, 558 S.W.3d 583, 588 (Mo. App. E.D. 2018); *see also Hamilton Props. V. Am. Ins. Co.*, 643 F.App'x 437, 440 (5th Cir. 2016) (prompt notice is construed to mean "that notice must be given within a reasonable time after the occurrence of the damage."); *Evergreen Recycle, L.L.C. v. Ind. Lumbermen's Mut. Ins. Co.*, 51 Kan. App. 2d 459, 507 (2015) ("A requirement in a policy for 'prompt' notice generally means that the notice must be given within reasonable time under the circumstances of the case."); *Huntington Chase Condo. Ass'n v. Mid-Century Ins. Co.*, 379 F.Supp. 3d 687, 691 (N.D. Ill. 2019) (prompt notice requires notice within a reasonable time).

Here, police were not notified of the subject incident at any point, let alone promptly. Ex. D, Plaintiff's Answer to Defendant's First Set of Interrogatories, ¶ 18. Though the incident took place on November 24, 2010, Plaintiff did not notify Defendant until just before filing the suit in November 2020. Ex. B, Littlefield Dep. 14:19–21, 136:19–24. Accordingly, the condition precedent to coverage was not met.

   **b. Defendant was prejudiced from the lack of notification to the police due to the inability to investigate the circumstances surrounding the phantom vehicle for nearly ten years.**

"Whether there was a material breach of an insurance contract by failing to notify the [police] . . . is whether the failure to notify the [police] was likely to result in prejudice to the insurer." *Rocha v. Metropolitan Prop. & Cas. Ins. Co.*, 14 S.W.3d 242, 248 (Mo. App. W.D. 2000). "Strong public policy interests are protected though the use of notice provisions." *Friend*

*v. State Farm Mut. Auto. Ins. Co.*, 746 S.W.2d 420, 423 (Mo. App. S.D. 1988) (*quoting Billings v. State Farm Mut. Auto. Ins. Co.*, 741 S.W.2d 886, 889 (Mo. App. E.D. 1987)).

The *Girard* Court stated:

> The breach occasioned by appellant's inaction was material. The failure to notify a law enforcement agency of any "phantom vehicle" thus neither caused a law enforcement agency to investigate for a "phantom vehicle", nor provided cause for respondent to enter upon such an investigation. . .
>
> It is further ruled that as a direct result of appellant's failure to report a "phantom vehicle", respondent was prejudiced concerning its right to timely investigate any allegation of a "phantom vehicle" so that determination of the existence or nonexistence of a spurious claim could be made under the provisions of the uninsured motorist section of respondent's policy.

*Girard*, 737 S.W.2d at 256.

The facts in *Girard* are not as extreme as the facts in the present case. As stated above, the police were never notified, and Defendant was only notified just short of ten years since the accident (as opposed to eighteen months after in *Girard*). Accordingly, Defendant was deprived of any ability to investigate the subject incident for nearly ten years. On these facts alone, summary judgment would be proper.

There is additional evidence in this case of prejudice against Defendant. The patient in the rear of the ambulance present with Plaintiff passed away on February 28, 2013, and had not discussed any incident occurring therein with that patient's spouse. Ex. E, Spouse of Patient Dep. 8:22–11:13, 14:6–11; Ex. F, EMS Report. Defendant was, therefore, unable to depose the patient before Defendant was notified.

Further, Ronald Birdsong, the corporate designee and Network Director of Security of St. Luke's Hospital, testified footage from video cameras recording at the time of the incident would have been lost within thirty to sixty days via rerecording. Ex. G, Ronald Birdsong Dep. 8:1–3,

8:21–23 (employed by St. Luke's for twenty-four years), Jun. 13, 2022. Mr. Birdsong provided still images of videos, as they would have been in place on November 24, 2010, which would have the capability of identifying vehicles backing out of the parking spots. *Id.* at 18:24–19:8, 47:21–48:13.² If a request came, depending on the source of the request, within the thirty-to-sixty day window in 2010, the video footage would have been copied to disc and Mr. Birdsong could have produced it to his risk management team. *Id.* at 37:15–39:24, 43:14–44:2; *see also id.* at 44:9–18 (standard procedure for St. Luke's risk management team was to preserve any such recording produced). If the police would have asked for such a recording, it would have been turned over to the police. *Id.* at 44:23–45:16 (St. Luke's has never denied a police request for video footage in Mr. Birdsong's twenty-four years of employment at St. Luke's Hospital). St. Luke's has previously used video footage to investigate a report, including to identify individuals). *Id.* at 46:3–47:13. This can no longer be done because the footage no longer exists. *Id.* at 47:14–20.

No security reports of St. Luke's Hospital were found regarding Plaintiff, despite protocol in place for an investigation by a security officer of injuries on the premises. *Id.* at 15:13–23; Ex. I (Depo. Ex. D, security policy, p. 1), 29:24–30:14 (no reports of Plaintiff or Firefighter Coughlin on November 24, 2010).

Without prompt notice to the police, there was no request to St. Luke's Hospital to preserve video footage and instigate an investigation regarding the facts surrounding the incident, including the identity of the operator of the phantom vehicle, any obstructions to the view of that operator, and the incident otherwise to determine whether Plaintiff can show entitlement to UM coverage. Defendant could have also reviewed the footage for any defenses it may otherwise have available.

---

² Firefighter Coughlin identified the location of the entrance of a tunnel with a red arrow, and Firefighter Coughlin saw a vehicle backing out of a parking space after he proceeded into the tunnel. Ex. C, Coughlin Dep. 23:12–22, 54:4–20; Ex. H, overhead map with arrows (Coughlin Ex. C).

All of this, for failure to follow the provision in the Policy, is now lost without any other avenue. Accordingly, Defendant has been prejudiced.

   **2. Plaintiff's claim is barred in that Defendant was not promptly notified of the incident.**

Here, the Policy also requires prompt notice of the accident or loss as a condition precedent to coverage. Ex. A. As stated above, Plaintiff did not notify Defendant for more than nine years and eleven months following the incident. Again, where Missouri law requires prejudice to be shown under such circumstances (*Weaver v. State Farm Mut. Auto. Ins. Co.*, 936 S.W.2d 818, 820 (Mo. banc 1997)). There is no evidence of any exception to the rule (such as incapacitation of Plaintiff for nearly ten years or substantial compliance). *See id.* For the reasons stated above, Defendant was precluded from investigating a key witness to the incident and tracking video recordings which could lead to witnesses or other evidence to assist in evaluation / defense of the matter. As a result, Plaintiff is barred from recovery by failure to promptly notify Defendant.

## CONCLUSION

WHEREFORE, for the reasons stated above, Defendant respectfully requests that this Court enter an Order granting summary judgment in favor of Defendant and against Plaintiff, for costs, and for such further relief this Court deems just and proper.

    /s/ Robert T. Plunkert
Robert T. Plunkert   #62064
PITZER SNODGRASS, P.C.
Attorney for Defendant American Alternative
Insurance Corporation
100 South Fourth Street, Suite 400
St. Louis, Missouri 63102-1821
(314) 421-5545
Email: plunkert@pspclaw.com

I, the undersigned, certify that a copy of the foregoing has been electronically served on all counsel of record via the Missouri eFiling System, or U.S. mail for parties not registered for the Missouri eFiling System, on this 13th day of July, 2022, to:

Brian Winebright
Cantor Injury Law, LLC
12283 Olive Boulevard
St. Louis, Missouri 63141
brian@cantorinjurylaw.com
*Attorney for Plaintiff*

      /s/ Robert T. Plunkert